**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

RENEE MARTINEZ,                           :
                                          :
                    Plaintiff,            :
                                          :
        v.                                :        C.A. No. 11-500-LPS
                                          :
DARHL SNYDER,                             :
MATTHEW WILLIAMS, and                     :
DELAWARE STATE POLICE,                    :
                                          :
                    Defendants.           :

**MEMORANDUM ORDER**

At Wilmington this 8th day of April, 2013, IT IS HEREBY ORDERED THAT:

Pending before the Court is a Motion for Summary Judgment (the "Motion") (D.I. 30)

filed by Defendants Darhl Snyder and Matthew Williams (collectively "Defendants"). For the

reasons discussed below, the Court will GRANT the motion as to Defendant Snyder and DENY

the motion as to Defendant Williams.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff Renee Martinez ("Plaintiff") filed this civil rights action pursuant to 42 U.S.C.

§ 1983 against Defendants Snyder, Williams, and the Delaware State Police arising from an

incident on September 16, 2009. (D.I. 1) Specifically, Plaintiff alleges: (1) Snyder and Williams

assaulted her, causing serious injuries to her face; (2) Delaware State Police failed to properly

train and supervise Snyder and Williams; and (3) state law tort claims of assault, battery, and

negligence. (*See* D.I. 1) On July 11, 2012, the parties reached an agreement to dismiss

1

Plaintiff's claims against the Delaware State Police as well as her claims against Snyder and Williams in their official capacities. (D.I. 29) Claims against Snyder and Williams in their individual capacities remain in the case. On July 31, 2012, Defendants moved for summary judgment on these remaining claims. (D.I. 31)

### B.    Factual Background

On September 15, 2009 at 8:58 p.m., Snyder was dispatched to Plaintiff's apartment complex in response to a report of a domestic dispute involving Plaintiff. (*See* D.I. 32 at A37-38) Snyder filled out a report and left the area after the parties involved in the dispute refused prosecution. (*See id.* at A70-71) Early the next morning, at approximately 1:34 a.m. on September 16, 2009, Snyder (along with Williams) was again dispatched to the same apartment for a possible domestic disturbance. (*See id.* at A33) After a short investigation, Defendants could not verify the reported disturbance. (*See id.* at A34-35) A short time after, Plaintiff called 911 and inquired about the police presence at her apartment complex. (*See id.* at A36) Snyder and Williams were both dispatched back to the complex yet again. (*See id.*) Defendants talked to Plaintiff at her apartment and did not observe any issues. (*See id.* at A37) While Defendants went to talk to the occupant of a neighboring apartment, Plaintiff came out of her apartment to question the action of Defendants. (*See id.* at A12-13) Plaintiff was told to return to her apartment but she refused. (*See id.* at A13) She insisted on obtaining the names and badge numbers of both Defendants. (*See id.* at A16) In response, Snyder wrote down the information and gave it to Plaintiff. (*See id.* at A40) Plaintiff was not satisfied and further demanded that Williams also provide his information. (*See id.* at A41) When Williams did not do so and attempted to leave as instructed by Snyder, Plaintiff placed her foot in front of Williams' patrol

2

vehicle so he could not leave. (*See id.* at A15) Williams then exited his vehicle and approached Plaintiff. (*See id.* at A16) Plaintiff became very agitated at this point and was "yelling" at Williams. (*Id.* at A16, A43, A63)

The parties' accounts differ as to what happened next. It is undisputed that Defendants attempted to place Plaintiff under arrest. Plaintiff resisted, and was subsequently punched in the face by Williams while she was down on the ground.

### 1. Snyder's account

Snyder states in his deposition (D.I. 32 at A25-51) that he was starting to leave when he observed Williams exiting his car. (*See id.* at A42) Snyder saw Plaintiff put her open hands up toward the approaching Williams. (*See id.*) Snyder did not see Plaintiff striking Williams, although he did observe Williams taking a step back. (*See id.*) It was then Snyder decided to place Plaintiff under arrest for disorderly conduct and menacing. (*See id.* at A43) A struggle ensued when Defendants both attempted to place Plaintiff under arrest and in handcuffs. (*See id.*)

Snyder states that Plaintiff represented no threat, nor did she take any violent actions prior to Defendants' attempt to arrest her. (*See id.* at A41) Plaintiff only started to struggle after Snyder announced that she was under arrest, when Defendants attempted to place handcuffs on her. (*See id.* at A41) Snyder does not allege that Plaintiff was fighting prior to the attempt to arrest her. (*See id.* at A47)

After the struggle started, according to Snyder, Plaintiff was "fighting violently, thrashing around, trying to get free from us." (*Id.* at A43) Snyder states that Plaintiff struck both officers before they took her to the ground. (*See id.* at A45) However, Snyder cannot confirm the level

3

of force used by Plaintiff – whether she stuck them with a fist or open hand. (*See id.* at A44) "It wasn't like she came back for a haymaker or something . . . Just her flailing her arms around, flailing and striking." (*Id.* at A 45) Snyder states that he and Williams "simultaneously took Martinez to the ground at that point." (*Id.* at A 46) After she was taken down to the ground, Plaintiff managed to free one of her arms and was flailing her arm around. (*See id.* at A 45) Snyder does not remember whether the hits were closed fist punches. (*Id.* at A46) Snyder states that his facial injury – a "raised red mark" – was suffered before Plaintiff was taken to the ground. (*Id.* at 45) Snyder further states that Defendants could only manage to put one handcuff on Plaintiff because she continued to struggle on the ground. (*See id.* at A46) It was at that time Williams "was forced to strike her in order for us to handcuff her." (*Id.*) Snyder does not recall if Plaintiff actually stuck either of the officers while she was on the ground. (*See id.*) The only hits by Plaintiff that Snyder can confirm both happened before she was taken to the ground. (*See id.* at A45) Snyder further confirms that Williams struck Plaintiff with a fist in the right eye or nose area while she was laying on her back on the ground. (*See id.* at A46)

### 2. Williams' account

Williams' version of the events is different than Snyder's. Williams claims that while Defendants and Plaintiff were all standing behind his police car, Plaintiff struck him in the left jaw so hard that he "took a couple of steps back." (D.I. 32 at A64) Then Williams recalls seeing "Corporal Snyder and Ms. Martinez going down to the ground." (*Id.*) Williams claims that he was trying to assist Snyder in order to subdue Plaintiff, but she continued to resist by "[f]lailing her arms, kicking, and . . . strik[ing] me in my face again." (*Id.* at A65) Williams claims that Plaintiff struck him in the chin area. (*See id.*) He claims that while there was no visible injury,

4

he was "sore afterwards." (*Id.*) As a result of Plaintiff's punch, Williams "struck her back" with a closed fist. (*Id.*) Williams admits to striking Plaintiff only once and only while using less than full force. (*Id.*)

### 3.   Plaintiff's account

Plaintiff claims that when Williams approached her after he got out of his patrol car, she merely put her hand up to show that she simply wanted his information. (*See* D.I. 32 at A16) She further claims that she has no recollection of much of what happened next. (*See id.*) The only memory she has is of "looking up . . . I was on the ground, looking up, and seeing the fist come at me." (*Id.*) She identifies Williams as the person who punched her in the eye. (*See id.*) She also claims that she remembers being struck twice by Williams while on the ground. (*See id.*) She does not remember if Snyder struck her at all during the incident. (*See id.*) She does not remember resisting arrest and striking or kicking Defendants at all during the whole incident, but she also does not offer any denial. (*See id.* at A17)

### 4.   Plaintiff's injury

Plaintiff suffered serious damage – including a blowout fracture of her orbital bone – that required surgical repair. (*See* D.I. 35 at B21-23) Plaintiff claims that she suffers persistent pain and diplopia. (*See id.*) Defendants do not dispute the extent of Plaintiff's eye injuries.

## II.   **LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining the appropriateness of summary judgment, the Court must "review the record taken as a whole . . . draw[ing] all reasonable inferences in favor of the nonmoving

5

party, and it may not make credibility determinations or weigh the evidence." *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted).

If the Court is able to determine that there is no genuine dispute as to any material fact and that

the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill*

*v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). A factual dispute is genuine only where

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50

(internal citations omitted).

## III.   DISCUSSION

### A.   Excessive Force

Defendants move for summary judgment on the grounds that their use of force was

reasonable and not excessive. (*See* D.I. 31 at 9-12)

Claims against police for excessive use of force in the course of an arrest are analyzed

under the objective reasonableness standard of the Fourth Amendment. *See Graham v. Connor*,

490 U.S. 386, 395 (1985). The reasonableness of the force used to effectuate an arrest is

assessed with "careful attention to the facts and circumstances of each particular case, including

the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of

the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade

arrest by flight." *Id.* Hence, summary judgment should be granted to Defendants here only if, as

a matter of law, the record evidence would not support a reasonable jury finding that the force

used by Defendants was objectively unreasonable. *See Anderson*, 411 U.S. at 247–48.

It is undisputed that Plaintiff was punched in the eye by Williams with a closed fist. It is also undisputed that Plaintiff suffered a fractured orbital bone which required surgical repair. Other details of the events surrounding Plaintiff's arrest are disputed. Evaluating the *Graham* factors based on review of the record in the light most favorable to Plaintiff, the Court concludes that summary judgment is not warranted for Williams but is for Snyder.

The first *Graham* factor considers the severity of the crime at issue. Plaintiff was placed under arrest for disorderly conduct and menacing. (*See* D.I. 32 at A43) The charges were subsequently dismissed. (*See* D.I. 35 at B6) Plaintiff's crime and arrest were entirely based on interactions with Defendants during the incident at issue.

The second *Graham* factor considers whether the suspect poses an immediate threat to the safety of the officers or others. There was no allegation that Plaintiff intentionally assaulted Defendants. Snyder states in his deposition that Plaintiff was not fighting before she was placed under arrest. (*See* D.I. 32 at A47) Even during the struggle to place her under arrest, the physical contact upon Defendants' bodies appears to have resulted from Plaintiff trying to avoid being placed in handcuffs. Both Snyder and Williams claimed that Plaintiff turned around abruptly and swung at Williams when they were attempting to handcuff her on the trunk of the car. (*See id.* at A44) However, there is dispute as to how hard she struck Williams and the effect of the blow: Snyder does not remember if Plaintiff hit Williams with a punch or a slap, while Williams recalls that the blow from Plaintiff was so hard that he was pushed backward. (*See id.* at A44, A64) After Plaintiff was taken to the ground, there is a further dispute as to whether Plaintiff was struck twice, as she claims, or just once, as Williams recalls. (*See id.* at A17) In the Court's view, there is a genuine dispute of fact as to whether Plaintiff posed an immediate threat to the

7

safety of Defendants or any others.

The third *Graham* factor considers whether the suspect is actively resisting arrest or attempting to flee. It is undisputed that Plaintiff was resisting arrest. It is not clear whether Plaintiff was also trying to flee.

Viewing the circumstances as a whole, in the light most favorable to Plaintiff, a reasonable jury could conclude that Williams' punch to Plaintiff's face – hard enough to fracture her orbital bone – was excessive and not reasonable under the circumstances. While Plaintiff did resist arrest, it is unclear whether it was necessary for Williams to punch her in the face in order to effect arrest. A jury could find that Plaintiff – a female of small size (*see* D.I. 34 at 8) – did not appear to be intoxicated, possessed no weapons, was held down on the ground by both Defendants, had only one hand free, and did not seem to be trying to seriously injure Defendants. The extent of the threat Martinez posed to Defendants in general and Williams in particular are genuine disputes of material fact for a jury to determine. *See, e.g., Bender v. Twp. of Monroe*, 289 F.App'x 526, 528-29 (3d Cir. 2008) (holding that genuine issues of material fact precluded summary judgment on whether police officers retaliated and used excessive force against arrestee by beating him while handcuffed, hitting him in face with flashlight, and breaking his cheekbone, because arrestee had kicked officer). Hence, the Court will deny Williams' motion for summary judgment with respect to Plaintiff's claim of excessive force.

On the other hand, Plaintiff does not allege that Snyder stuck her or caused her any injuries. (D.I. 32 at A16) There is no evidence from which a reasonable juror could conclude anything other than that Snyder's actions were reasonable under the circumstances. Accordingly, summary judgment in favor of Snyder is proper on Plaintiff's excessive force claims.

8

### B. Qualified Immunity

Defendants next argue that summary judgment should be granted in their favor because they are entitled to qualified immunity. (*See* D.I. 31 at 12-14)  When analyzing qualified immunity, the two-step test set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), while not mandatory, is often appropriate.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Pursuant to *Saucier*, the Court first examines whether the alleged conduct, taken in the light most favorable to Plaintiff, violated a constitutional right.  *See Saucier*, 533 U.S. at 201.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.*  If the allegations amount to violation of a constitutional right, then the Court proceeds to the second inquiry and determines if the right was "clearly established in the specific context of the case."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  Courts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.  *See Pearson*, 555 U.S.. at 236.

Here, applying the *Saucier* two-step test, the Court concludes that Plaintiff's allegation that Williams used excessive force in connection with her arrest would, if established, violate a constitutional right arising under the Fourth Amendment.  *See Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004) (citing *Graham*, 490 U.S. at 395).  At the second step of *Saucier*, determining whether Plaintiff's constitutional right was "clearly established" involves an inquiry into whether her right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  This, in turn, requires a consideration of whether the officers' actions were objectively

reasonable under the circumstances. *See Yarnall v. Mendez*, 509 F. Supp. 2d 421, 435 (D. Del. 2007). As explained above in connection with analyzing the excessive force claim, the Court concludes that, taking the evidence in the light most favorable to Plaintiff, there are genuine disputes of material fact as to how much force Williams used to effectuate Plaintiff's arrest and whether that force was reasonable under all the circumstances. Accordingly, it follows that the Court should not grant summary judgment to Williams on the basis of qualified immunity.

C.    **State Law Claims**

Plaintiff asserts state law tort claims of assault, battery, and negligence against Defendants. (*See* D.I. 1 at 5) Defendants contend that they cannot be found liable on these claims because their use of force is privileged and justified under Delaware law. (*See* D.I. 31 at 15)

"[C]onduct which would otherwise constitute an offense is justifiable when it is required or authorized by a provision of law." 11 Del. C. § 642. In a law enforcement context, justification is afforded when an officer is "making an arrest or assisting in making an arrest and believes that such force is immediately necessary to effect the arrest." 11 Del. C. § 647. Thus, Defendants' conduct is privileged and justified if Defendants believed that such force was immediately necessary and authorized by law.

Defendants argue that Delaware uses a subjective test and the reasonableness of the force used depends on Defendants' state of mind. (*See* D.I. 31 at 15-16) Because there is no dispute that Defendants believed use of force is necessary, their use of force was therefore privilege and justified. (*Id.*)

The Court is not persuaded. In *Lloyd v. Jefferson*, 53 F. Supp. 2d 643, 687 (D. Del.

10

1999), the Court distinguished between "authority to act" and "acting in a lawful manner." *Lloyd* explained that:

> Though Delaware law requires the fact finder to use a
> subjective test to evaluate the defendant's decision to use
> force in self defense, in order for an officer to avail himself
> of the qualified privilege to use force, he is limited in the
> amount of force he can use to that reasonably necessary in
> the circumstances. Therefore, notwithstanding the use of
> the subjective test, a credibility determination must be
> made as to the reasonableness of defendant's subjective
> belief.

*Id.* at 688. *Lloyd* denied summary judgment based on the defense of privilege because there was a genuine dispute of fact as to the reasonableness of the defendant officer's subjective belief. *See id.*

Here, the situation is quite similar. Even if it is undisputed that Williams subjectively believed he was acting under authority of law, in order to be privileged his conduct must also be reasonably necessary under the circumstances. As already indicated above, in the Court's view the procedural posture of this case precludes reaching such a conclusion on the present record. Accordingly, summary judgment is not warranted.

Plaintiff does not allege that Snyder stuck her or caused her any injuries. There is no evidence from which a reasonable juror could conclude anything other than that Snyder took appropriate actions in order to place Plaintiff under arrest while he was acting pursuant to his duties under the authority of law. Summary judgment in favor of Snyder is therefore proper on Plaintiff's state law claims.

11

## IV.    CONCLUSION

For the foregoing reasons, IT IS THEREBY ORDERED THAT Defendants' motion for

summary judgment (D.I. 30) is GRANTED with respect to Defendant Snyder and DENIED with

respect to Defendant Williams.

 

UNITED STATES DISTRICT JUDGE

12